1    **JS-6**

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11

12   JEFFERY R. WERNER,              CV 20-4240-RSWL-JEMx

13            Plaintiff,             **ORDER re: Motion to Dismiss Amended Complaint or in the Alternative to Transfer Venue to the Eastern District of Missouri** [18]

14        v.

15   MULTIPLY MEDIA, LLC,

16            Defendant.

17

18        Plaintiff Jeffery R. Werner ("Plaintiff") brings

19   this Action for copyright infringement against Defendant

20   Multiply Media, LLC ("Defendant").  Currently before the

21   Court is Defendant's Motion to Dismiss Plaintiff's

22   Amended Complaint or in the Alternative to Transfer

23   Venue to the Eastern District of Missouri (the "Motion")

24   [18].

25        Having reviewed all papers submitted pertaining to

26   the Motion, the Court **NOW FINDS AND RULES AS FOLLOWS:**

27   the Court **GRANTS in part** and **DENIES in part** Defendant's

28   Motion.

1              **I.   BACKGROUND**

2  **A.  <u>Factual Background</u>**

3      Plaintiff is a professional photographer residing

4  in Los Angeles, known for capturing dangerous stunts and

5  "for his work with exotic animals, celebrities in their

6  homes, remote aboriginal peoples, sideshow eccentrics,

7  and people who have overcome incredible obstacles."

8  First. Am. Compl. ("FAC") ¶¶ 4-5, 7-8, ECF No. 15.

9  Plaintiff is also the president of Incredible Features,

10 Inc., an editorial photo syndication agency.  <u>Id.</u> ¶ 6.

11 Plaintiff relies on licensing opportunities to research

12 and fund future photo shoots, make a living, and pay his

13 staff at Incredible Features.  <u>Id.</u> ¶ 24.

14     Defendant is a Delaware company with its principal

15 place of business in Missouri.  <u>Id.</u> ¶ 9.  Defendant

16 publishes curated digital content on its numerous

17 websites, including www.urbo.com and www.healthyway.com

18 (the "Websites").  <u>Id.</u> ¶¶ 10-12.

19     Plaintiff is the author of several photographs

20 depicting a woman wearing many rings around her neck

21 (the "Giraffe Woman Photographs") and a very small woman

22 with her husband and children (the "Small Mom

23 Photographs") (collectively, the "Subject Photographs").

24 <u>Id.</u> ¶¶ 27-28, 34-35.  The Subject Photographs are

25 registered with the U.S. Copyright Office.  <u>Id.</u>

26     The Giraffe Woman Photographs were originally

27 published on March 16, 2017, under license to *The Daily*

28 *Mail*, with copyright management information ("CMI") in

the form of watermarks and metadata. Id. ¶ 29. Some of the Small Mom Photographs were originally published on November 9, 2009, and others, on July 6, 2010, under license to *The Daily Mail*, with CMI in the form of watermarks and metadata. Id. ¶¶ 36–37.

On or about April 7, 2020, Plaintiff or his licensing agent, Incredible Features, discovered that Defendant had published articles incorporating unauthorized copies of the Subject Photographs on its Websites. Id. ¶¶ 30, 32, 38, 40. Plaintiff alleges that the copies of the Subject Photographs distributed by Defendant had been altered to remove some portion of the CMI indicating Plaintiff as the copyright owner. Id. ¶¶ 31, 39. Neither Plaintiff nor Incredible Features gave Defendant permission to use the Subject Photographs or alter the CMI. Id. ¶¶ 33, 41, 68.

According to Plaintiff, Defendant's unauthorized use of the Subject Photographs "not only deprives the owner of license fees but also destroys the syndication value of the work" because publications are unwilling to pay for work that is already widely disseminated on the internet for free. Id. ¶ 44.

B. **Procedural Background**

Plaintiff filed his Complaint [1] against Defendant on May 8, 2020. The parties stipulated to extend Defendant's time to answer [9], and Defendant moved to dismiss the Complaint or alternatively transfer venue to the Eastern District of Missouri [11] on July 31, 2020.

On August 11, 2020, Defendant filed its FAC [15], asserting claims for: (1) copyright infringement; (2) vicarious and/or contributory copyright infringement; and (3) alteration of CMI in violation of 17 U.S.C. § 1202.  The Court granted [17] a stipulation to withdraw the motion to dismiss or transfer without prejudice to refiling in response to the FAC.

On August 31, 2020, Defendant filed the instant Motion [18].  Plaintiff filed his Opposition [19] on September 15, 2020, and Defendant timely replied [20].

## II.   DISCUSSION

### A.   Legal Standard

Federal Rule of Civil Procedure ("Rule") 12(b)(2) provides a basis for moving to dismiss for lack of personal jurisdiction.  Once a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court may properly exercise jurisdiction over the defendant. Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006).  Where the motion is "based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts" to survive dismissal.  Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1223 (9th Cir. 2011).

"The plaintiff cannot 'simply rest on the bare allegations of [the] complaint,' but uncontroverted allegations in the complaint must be taken as true." Id. (quoting Schwarzenegger v. Fred Martin Motor Co.,

374 F.3d 797, 800 (9th Cir. 2004)).  If the defendant presents evidence contradicting the allegations, however, the plaintiff must "come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." Barantsevich v. VTB Bank, 954 F. Supp. 2d 972, 982 (C.D. Cal. 2013) (quoting Scott v. Breeland, 792 F.2d 925, 927 (9th Cir. 1986)).  Although the court "may not assume the truth of allegations in a pleading which are contradicted by affidavit," factual disputes must be resolved in the plaintiff's favor.  Mavrix, 647 F.3d at 1223.

"Personal jurisdiction over [a nonresident] defendant is proper where permitted by a long-arm statute and where the exercise of jurisdiction does not violate federal due process." AMA Multimedia, LLC v. Wanat, 970 F.3d 1201, 1207 (9th Cir. 2020) (citing Pebble Beach, 453 F.3d at 1154).  Where no applicable federal statute governs personal jurisdiction, "the district court applies the law of the state in which the court sits." Mavrix, 647 F.3d at 1223.  "Because 'California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution,' our inquiry centers on whether exercising jurisdiction comports with due process." Picot v. Weston, 780 F.3d 1206, 1211 (9th Cir. 2015) (quoting Daimler AG v. Bauman, 571 U.S. 117, 125 (2014)); see Cal. Code Civ. Proc. § 410.10. ///

Due process requires that a nonresident defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 923 (2011) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). Depending on the nature of the defendant's contacts, a court may exercise either general or specific jurisdiction. Bristol-Myers Squibb Co. v. Super. Ct. of Cal., 137 S. Ct. 1773, 1780 (2017). General jurisdiction exists when the defendant's contacts "are so continuous and systematic as to render [it] essentially at home in the forum State." Daimler, 571 U.S. at 139 (internal quotation marks and citation omitted). By contrast, specific jurisdiction exists when the suit "aris[es] out of or relate[s] to the defendant's contacts with the forum." Id. at 127 (alteration in original).

**B.  Discussion**[1]

Defendant seeks to dismiss this Action based on lack of personal jurisdiction and improper venue. Mot.

---

[1] Defendant brings seven evidentiary objections to portions of Plaintiff's Declaration of Peter Perkowski [19-1] and to Exhibits 4, 6, and 7 attached thereto based on inadmissible hearsay grounds under Federal Rule of Evidence ("FRE") 801 and 802, and a lack of personal knowledge or lack of foundation under FRE 602. See generally Def.'s Evidentiary Objs. to the Decl. of Peter Perkowski, ECF No. 20-2. The Court declines to rule on these objections because even if the objected-to evidence is considered, it is insufficient to establish personal jurisdiction over Defendant.

1    to Dismiss Pl.'s Am. Compl. or in the Alternative

2    Transfer Venue to E.D. Mo. ("Mot.") 1:16-18, ECF No. 18.

3    Alternatively, Defendant seeks to transfer the Action to

4    the Eastern District of Missouri under 28 U.S.C. § 1404.

5    Id. at 1:19-22.

6        1.   General Jurisdiction

7        "The standard for general jurisdiction 'is an

8    exacting standard, as it should be, because a finding of

9    general jurisdiction permits a defendant to be haled

10   into court in the forum state to answer for any of its

11   activities anywhere in the world.'"  Mavrix, 647 F.3d at

12   1224 (quoting Schwarzenegger, 374 F.3d at 801).  A

13   plaintiff must show that a nonresident defendant's

14   contacts are "so continuous and systematic as to render

15   [it] essentially at home in the forum State."  Daimler,

16   571 U.S. at 139 (internal quotation marks and citations

17   omitted).  The paradigmatic forums for general

18   jurisdiction over a corporation are its place of

19   incorporation and principal place of business.  Daimler,

20   571 U.S. at 137.  Only in an "exceptional case" will

21   general jurisdiction be available elsewhere.  Id. at 139

22   n.19.

23       There is no dispute that the paradigmatic bases for

24   general jurisdiction are inapplicable here: Defendant is

25   a Delaware limited liability company with its principal

26   place of business in Missouri.[2]  FAC ¶ 9; Mot. 1:23-24.

27   _____

28       [2] "In determining whether general jurisdiction exists over a
     limited liability company . . . , we are guided by the personal

7

Plaintiff nonetheless argues that Defendant is subject to general jurisdiction because Defendant: (1) registered to do business in California; (2) provided a Santa Monica office address on a form filed with the Secretary of State; (3) designated an agent for service of process in California; (4) has nine employees in California; (5) has investor and funding relationships with companies in California; and (6) hosts its Websites' domains on servers located in California.[3] FAC ¶¶ 8-22; Opp'n 6:5-9:2.

The Court finds that Plaintiff has failed to make a prima facie showing of jurisdictional facts to support the exercise of general jurisdiction over Defendant. Notably, many of Plaintiff's alleged jurisdictional facts are purely speculative or inferences based on internet searches conducted on third-party websites. Further, Defendant submits two declarations from its

---

jurisdiction jurisprudence that has arisen in cases discussing corporations." Angelini Metal Works Co. v. Hubbard Iron Doors, Inc., No. CV 11-6392-GHK (PLAx), 2016 WL 6304476, at *3 (C.D. Cal. Jan. 5, 2016) (collecting cases); see Ranza v. Nike, Inc., 793 F.3d 1059, 1069 (9th Cir. 2015) (applying general jurisdiction analysis for corporations to a limited liability company).

[3] Plaintiff also contends, without any evidentiary support, that it "would be surprising" if many of the "subject-matter enthusiasts, bloggers, and premium publishers" with whom Defendant has relationships "weren't in California." Opp'n 7:23-27. The Court declines to rely on this unsupported allegation. See Sanho Corp. v. KaiJet Tech. Int'l Ltd., Inc., No. 5:18-CV-03150-EJD, 2018 WL 6138136, at *2 (N.D. Cal. Nov. 23, 2018) ("[T]he court need not assume the truth of mere conclusory allegations." (citation omitted)).

General Manager, Chris Hawkins ("Hawkins"), refuting these inferences.

For instance, Plaintiff claims that Defendant has nine employees in California based on a LinkedIn search. Opp'n 7:16-22; Decl. of Peter Perkowski ("Perkowski Decl.") ¶ 5, ECF No. 19-1.  The Court doubts whether the screenshot of the search results submitted by Plaintiff has sufficient indicia of reliability to be considered as evidence, as there is no indication of how the search results are generated and three of the listed individuals are anonymously identified as "LinkedIn Member."  See Perkowski Decl. Ex. 4, ECF No. 19-5. Setting aside the questionable accuracy of user-submitted information on social media, the search results do not identify Defendant as the employer of any of the listed individuals.  See id.  Indeed, Hawkins declares that none of these individuals ever worked for Defendant, Defendant has no employees in California and did not have any employees in California at the time the Subject Photographs were allegedly published, and no employee who ever worked on the Websites or had any involvement with the subject articles lived in California.  Decl. of Chris Hawkins in Supp. of Reply ("Hawkins Reply Decl.") ¶¶ 4-5, ECF No. 20-1.

Plaintiff correctly states that the Court must resolve conflicts in the evidence in Plaintiff's favor. Opp'n 8:20-22; see Schwarzenegger, 374 F.3d at 800. Even if the Court accepts as true that Defendant has

nine employees in California, Plaintiff's own evidence belies his claim of general jurisdiction.  According to Plaintiff's counsel, the same search process that showed nine individuals allegedly working for Defendant in California also revealed 265 LinkedIn members who worked for Defendant and a related company.  Perkowski Decl. ¶ 5.  The presence of a mere fraction of Defendant's employees in California would not tend to support a finding that Plaintiff is "essentially at home" here.

Similarly, Plaintiff claims that Defendant's Websites' domains are hosted on California servers "based on publicly available domain geolocation tools," which show that "each [Website] has an IP address indicating that it is located in San Francisco, California."  FAC ¶ 14; Opp'n 8:2-5.  Defendant does not dispute that Plaintiff's search results reflected this information but instead provides evidence that it does not own and operate the servers for the Websites.  Reply 2:11-14.  Defendant contracts with Amazon Web Services to host the Websites, and Amazon Web Services maintains the physical servers for them in Virginia.  Decl. of Chris Hawkins in Supp. of Mot. ("Hawkins Decl.") ¶ 5, ECF No. 18-1.  Defendant also contracts with a third party to improve the speed of its content delivery, but even if that third party maintains any servers in California, Defendant has not requested that content from the Websites be stored on or passed through them. Id. ¶ 9.

1    Here, there is no actual conflict in evidence to be
2 resolved in Plaintiff's favor.  Plaintiff infers that
3 the Websites are hosted in California based on the
4 search results of a publicly available domain
5 geolocation tool.  Defendant refutes that inference, and
6 even if the Court takes Plaintiff's inference as true,
7 the two Websites' location has little effect in
8 determining whether Defendant, who operates numerous
9 websites, is "essentially at home" in California.  See
10 FAC ¶¶ 10-11.
11    Plaintiff's remaining allegations are likewise
12 unavailing.  The parties do not dispute that registering
13 to do business in California and designating an agent
14 for service of process alone are insufficient for
15 general jurisdiction.  Opp'n 7:10-12; Reply 2:7-10.
16 Plaintiff claims Defendant has an office in Santa
17 Monica, but Defendant explains that the Santa Monica
18 address provided to the California Secretary of State is
19 not Defendant's office address but rather a former
20 employee's residential address where Defendant could
21 accept service of process.  Hawkins Decl. ¶ 8.
22 Defendant maintains that it never had any offices in
23 California, Hawkins Reply Decl. ¶ 3, and its only
24 offices are in Missouri and New York, Hawkins Decl. ¶ 3.
25 Plaintiff also alleges that Defendant has investor and
26 funding relationships with companies in California, but
27 the evidence submitted in support thereof indicates that
28 Defendant has not transacted with three of the four

companies in one to two decades.[4]  Opp'n 7:27-8:2;
Perkowski Decl. Ex. 7, ECF No. 19-8.  Aside from a
current borrowing relationship with one California bank,
Defendant has no relationship with the California-based
lenders and investors identified by Plaintiff.  Reply
4:9-18; see Hawkins Reply Decl. ¶ 6.

Considered in the light most favorable to
Plaintiff, the alleged jurisdictional facts, taken
together, are insufficient to establish general
jurisdiction over Defendant.  Even if Defendant has some
systematic and continuous contacts with California,
Plaintiff has not met its burden of establishing that
this is an "exceptional case" in which the exercise of
general jurisdiction is appropriate outside Defendant's
place of incorporation and principal place of business.
See Daimler, 571 U.S. at 137, 139 n.19.

Further, Hawkins's declarations show that Defendant
has virtually no contacts with California.  Defendant
has no offices, employees, or equipment in California.
Hawkins Decl. ¶ 4.  In contrast to Defendant's contacts
in Missouri, where Defendant primarily operates and half
of its employees are located, id. ¶ 3, Plaintiff's
limited contacts with California are not "so continuous

---

[4] The Supreme Court has never stated the proper timeframe
for analyzing a defendant's contacts with the forum.  4 Fed.
Prac. & Proc. Civ. § 1067.5 (4th ed.).  "[M]ost courts use a
'reasonable time' standard yielding timeframes of roughly three
to seven years."  Id.; see Helicopteros Nacionales de Colombia,
S.A. v. Hall, 466 U.S. 408, 409-11 (1984) (seven years).

and systematic as to render [it] essentially at home"
here.  Daimler, 571 U.S. at 139 (internal quotation
marks and citations omitted); see, e.g., BNSF Ry. Co. v.
Tyrrell, 137 S. Ct. 1549, 1559 (2017) ("[T]he general
jurisdiction inquiry does not focus solely on the
magnitude of the defendant's in-state contacts. . . .
Rather, the inquiry calls for an appraisal of a
corporation's activities in their entirety . . . ."
(internal quotation marks and citation omitted)); Ranza,
793 F.3d at 1070 (citing Daimler, 571 U.S. at 139 n.20)
("[T]he general jurisdiction inquiry examines a
corporation's activities worldwide—not just the extent
of its contacts in the forum state—to determine where it
can be rightly considered at home.").

Accordingly, the Court concludes that Defendant is
not subject to general jurisdiction in California.

2.  Specific Jurisdiction

"The inquiry whether a forum State may assert
specific jurisdiction over a nonresident defendant
focuses on the relationship among the defendant, the
forum, and the litigation."  Walden v. Fiore, 571 U.S.
277, 283-84 (2014) (internal quotation marks and
citations omitted).  For the exercise of specific
jurisdiction to comport with due process, "the
defendant's suit-related conduct must create a
substantial connection with the forum State."  Id. at
284.  The Ninth Circuit established three requirements
for a court to assert specific jurisdiction over a

nonresident defendant:

> (1) the defendant must either "purposefully direct his activities" toward the forum or "purposefully avail[] himself of the privileges of conducting activities in the forum"; (2) "the claim must be one which arises out of or relates to the defendant's forum-related activities"; and (3) "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable."

Axiom Foods, Inc. v. Acerchem Int'l, Inc., 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting Dole Foods Co., Inc. v. Watts, 303 F.3d 1104, 1111 (9th Cir. 2002)). The plaintiff bears the burden of satisfying the first two elements. Id. "If the plaintiff meets the burden, 'the burden then shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable.'" Axiom Foods, 874 F.3d at 1068-69 (quoting Schwarzenegger, 374 F.3d at 802).

      a. *Purposeful Direction*

Because copyright infringement actions sound in tort, the purposeful direction analysis applies here. See Mavrix, 647 F.3d at 1228. Purposeful direction is analyzed under the "effects" test, which requires that the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Axiom Foods, 874 F.3d at 1069 (internal quotation marks and citation omitted).

///

///

14

i. *Intentional Act*

Under the first prong, Plaintiff must show that Defendant committed an intentional act.  See id.  "For purposes of jurisdiction, a defendant acts intentionally when he acts with 'an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act.'"  AMA Multimedia, 970 F.3d at 1209 (quoting Schwarzenegger, 374 F.3d at 806).  Here, Plaintiff claims that Defendant copied five of Plaintiff's photographs and published them on the Websites.  FAC ¶¶ 30, 38; Opp'n 9:18-20.  This was indisputably an intentional act, so the first prong is satisfied.  See Mavrix, 647 F.3d at 1229 ("There is no question that [the defendant] acted intentionally reposting the allegedly infringing photos . . . .").

ii. *Expressly Aimed*

The second prong requires Plaintiff to demonstrate that Defendant "expressly aimed" its intentional act at the forum.  See Axiom Foods, 874 F.3d at 1069.  The Ninth Circuit has "struggled with the question whether tortious conduct on a nationally accessible website is expressly aimed at any, or all, of the forums in which the website can be viewed."  Mavrix, 647 F.3d at 1229.  Although operating "a passive website alone cannot satisfy the express aiming prong," doing so in conjunction with "something more—conduct directly targeting the forum—is sufficient."  Id.  A defendant

15

can be said to have "expressly aimed" at a forum where its website "with national viewership and scope appeals to, and profits from, an audience in a particular state."  Id. at 1231.

Here, Plaintiff does not allege that the Websites are anything but passive.  Plaintiff instead suggests that "something more" is present here because: (1) "at least some of the advertising on the Websites targeted Los Angeles viewers"; and (2) "[Defendant's] copyright infringing conduct was targeted at [Plaintiff]."  Opp'n 10:16-11:10.

First, Plaintiff argues that Defendant's express aiming at California is shown by two advertisements for Los Angeles-area entities found on the Websites.  Opp'n 10:24-11:1; see Perkowski Decl. ¶ 9.  The Court disagrees.  While these advertisements may indicate that Defendant "profits from" viewers in California, nothing suggests that the Websites "appeal[] to" a California audience.  Plaintiff alleges that the Websites generally "curate content that entertains, engages, and enlightens its readers."  FAC ¶ 11.  No facts indicate that the Websites or their subject matter are focused on California.  Nor does the record reflect that the Websites appeal to a significant California audience.

Because the California audience is not "an integral component of [Defendant]'s business model and profitability," the two Los Angeles-oriented advertisements are insufficient to establish the express

16

aiming prong. Mavrix, 647 F.3d at 1230. Compare id.
(finding the express aiming prong satisfied where the
defendant posted the plaintiff's copyrighted photos on
its website that had "a specific focus on the
California-centered celebrity and entertainment
industries" and "a substantial California viewer base,"
which it exploited "for commercial gain by selling space
on its website for [California-targeted]
advertisements"), with AMA Multimedia, 970 F.3d at 1210,
1211 n.7 (finding the defendant's adult video website
did not "appeal[] to," and thus did not expressly aim
at, the forum where the website "lack[ed] a forum-
specific focus," while distinguishing Mavrix based on
that defendant's celebrity gossip website "which
targeted California users through the website's content"
(emphasis and first alteration in original)).[5]

Additionally, Defendant maintains that it does not
direct or control the geographic focus of any
advertisements found on its Websites. Reply 5:14-16;
Hawkins Reply Decl. ¶ 7. Defendant sells advertising
space to a national intermediary seller and is at least
twice removed from the third-party entity selecting who
advertises on the Websites. Reply 5:17-22; Hawkins
Reply Decl. ¶ 7. The Supreme Court "made clear that the

---

[5] Although AMA Multimedia analyzed personal jurisdiction
under the federal long-arm statute, it is nonetheless instructive
here, as California's long-arm statute is coextensive with
federal due process requirements. See Cal. Civ. Proc. Code §
410.10; Mavrix, 647 F.3d at 1223.

third-party advertiser's behavior cannot be attributed to the defendant as a contact." <u>AMA Multimedia</u>, 970 F.3d at 1211 n.6 (citing <u>Walden</u>, 571 U.S. at 284). Because the Los Angeles-targeted advertisements are selected by a third party, their geographic focus cannot support a finding that Defendant expressly aimed its intentional acts at California. <u>See</u> <u>Walden</u>, 571 U.S. at 284 ("We have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State."); <u>cf.</u> <u>AMA Multimedia</u>, 970 F.3d at 1211 (stating that geo-located advertisements do not establish that the defendant expressly aimed at the forum, as the defendant "does not personally control the advertisements shown on the site" because it contracts with third parties who "tailor the advertisements themselves or sell the space to other parties who do").

Second, to support his argument for express aiming, Plaintiff points to the fact that "[Defendant]'s copyright infringing conduct was targeted at [Plaintiff]." Opp'n 11:3-4. Specifically, Plaintiff contends that the Subject Photographs originally had been published with CMI showing "© Incredible Features," Plaintiff's licensing agency, and the CMI provided Defendant with "all the information it needed to know that it was targeting a copyright owner in California." <u>Id.</u> 11:6-10. The Court is unpersuaded. The CMI—which indicates nothing about Plaintiff's location—does not

establish that Defendant knew Plaintiff resides in
California.  <u>See</u> <u>Michael Grecco Prods., Inc. v. NetEase</u>
<u>Info. Tech. Corp.</u>, No. CV 18-3119 DSF (RAOx), 2018 WL
6443082, at *3 (C.D. Cal. Sept. 24, 2018) (finding the
use of the plaintiff-corporation's principal's name on
watermarks insufficient to demonstrate the express
aiming prong).

And even if it did, the Supreme Court requires the
Court to "look to the defendant's 'own contacts' with
the forum, not to the defendant's knowledge of a
plaintiff's connections to a forum." <u>Axiom Foods</u>, 874
F.3d at 1070 (citing <u>Walden</u>, 571 U.S. at 289).  "[A]
plaintiff's contacts with the forum State cannot be
'decisive in determining whether the defendant's due
process rights are violated[.]'" <u>Walden</u>, 571 U.S. at
279 (quoting <u>Rush v. Savchuk</u>, 444 U.S. 320, 332 (1980)).
In the wake of the Supreme Court's decision in <u>Walden</u>,
"individualized targeting"—or a defendant's alleged
copyright infringement and "its knowledge of both the
existence of the copyright and the forum of the
copyright holder"—is insufficient to establish express
aiming.  <u>Axiom Foods</u>, 874 F.3d at 1069-70; <u>see also</u> <u>AMA</u>
<u>Multimedia</u>, 970 F.3d at 1209 n.5 ("In <u>Walden</u>, the
Supreme Court rejected our prior decisions holding that
the express aiming element could be satisfied by a
defendant's knowledge that harm may be inflicted on a
plaintiff in a particular forum.").
///

Further, in his FAC, Plaintiff asserts that the Court has jurisdiction over Defendant because "based on publicly available domain geolocation tools, [the Websites'] domains are hosted on servers located in California.  That is, the instrumentalities through which [Defendant] committed infringement—the Websites— each has an IP address indicating that it is located in San Francisco, California."[6]  FAC ¶ 14.  Defendant contends that it contracts with a third party who maintains the physical servers for the Websites in Virginia.  Mot. 8:5-9.  In any event, "the physical location of servers cannot confer the necessary contacts between a defendant and a forum for the exercise of personal jurisdiction."  Dish Network, LLC v. Jaddo TV, Inc., No. CV 18-9768 FMO (KSx), 2020 WL 6536659, at *7 (C.D. Cal. Mar. 16, 2020) (collecting cases); see also Michael Grecco Prods., 2018 WL 6443082, at *4 ("Plaintiff cites no cases, and the Court found none, where a defendant's contract with an entity that maintained a server in the forum state was itself sufficient to show a defendant expressly aimed its conduct at that forum state.").  But see DEX Sys., Inc.

---

[6] Plaintiff does not identify which type of personal jurisdiction—general or specific—each allegation in the FAC is offered to support.  In opposing the Motion, Plaintiff discusses the domains' alleged location in California in his argument for general jurisdiction.  See Opp'n 8:2-5.  In the FAC, however, Plaintiff alleges that his claims against Defendant "arise from these contacts with California."  FAC ¶ 17.  Therefore, the Court addresses whether this allegation supports the exercise of specific jurisdiction.  See Daimler, 571 U.S. at 127.

v. Deutsche Post AG, 727 F. App'x 276, 278 (9th Cir. 2018) (finding the "expressly aimed" prong met where the allegedly infringing use of the plaintiff's software occurred in California on the defendant's California servers, which were located there "pursuant to an agreement reached by the parties").

In sum, Plaintiff has not shown "something more" to establish that Defendant expressly aimed its intentional acts toward California.  The only asserted contacts between Defendant and California are too "random, fortuitous, or attenuated" to confer specific jurisdiction over Defendant.  Walden, 571 U.S. at 286. Because Plaintiff has not established the second prong of the Ninth Circuit's purposeful direction test, the Court need not address the remaining requirements for specific jurisdiction.  See Schwarzenegger, 374 F.3d at 807 n.1 (noting that the court "need not, and do[es] not, reach the third part of the [effects] test" because the plaintiff failed to show that the defendant expressly aimed its intentional acts at California); AMA Multimedia, 970 F.3d at 1212 n.9 ("Because we hold that [the plaintiff] has failed to meet its burden on the first prong of the minimum contacts test regarding purposeful direction, we do not need to reach the second and third prongs.").  Accordingly, the Court concludes that Plaintiff has failed to make a prima facie showing that Defendant is subject to this Court's specific jurisdiction.

1       3.   Transfer

2       "Once [the] Court determines that it lacks personal

3  jurisdiction, it may dismiss the case or, in the

4  interest of justice, transfer the case under 28 U.S.C. §

5  1406(a)." Wickline v. United Micronesia Dev. Ass'n,

6  Inc., No. C 14-00192 SI, 2014 WL 2938713, at *9 (N.D.

7  Cal. June 30, 2014) (citations omitted); see also Werner

8  v. Dowlatsingh, 818 F. App'x 671, 674 (9th Cir. 2020)

9  ("A district court lacking personal jurisdiction over

10  the defendant may transfer the case to a district court

11  where the case 'could have been brought.'" (quoting 28

12  U.S.C. § 1406(a)) (citing Goldlawr, Inc. v. Heiman, 369

13  U.S. 463, 466 (1962))).

14       Plaintiff requests that, if the Court finds it does

15  not have jurisdiction over Defendant, the Court transfer

16  this Action rather than dismissing it "because the

17  statute of limitations could potentially become an issue

18  if Plaintiff had to re-file in Missouri." Opp'n 14:1-7,

19  15:1-16:11. Defendant is subject to personal

20  jurisdiction in the Eastern District of Missouri based

21  on both the location of its principal place of business

22  and its consent. Mot. 14:1-5; Hawkins Decl. ¶ 7. Venue

23  is proper in that district, and the parties concede that

24  the Action could have been brought there. Opp'n 16:14-

25  15; Reply 9:7-8. Accordingly, the Court finds that it

26  is in the interest of justice to transfer the Action to

27  the Eastern District of Missouri. See Adobe Sys. Inc.

28  v. Cardinal Camera & Video Ctr., Inc., No. 15-CV-02991-

1    JST, 2015 WL 5834135, at *6 (N.D. Cal. Oct. 7, 2015)
2    (transferring, rather than dismissing, the case where
3    the transferee court had personal jurisdiction over the
4    defendant, and "neither party dispute[d] that the case
5    could have been brought there in the first place").

6         4.   The Remaining Motions

7         Because the Court determines that it lacks personal
8    jurisdiction over Defendant, and exercises its
9    discretion to transfer this Action to the Eastern
10   District of Missouri, the Court need not separately
11   consider Defendant's motion to dismiss for improper
12   venue under Rule 12(b)(3) and motion to transfer under
13   28 U.S.C. § 1404.  Accordingly, those motions are **DENIED**
14   **as moot**.

15        5.   Request for Jurisdictional Discovery

16        "Discovery may be appropriately granted where
17   pertinent facts bearing on the question of jurisdiction
18   are controverted or where a more satisfactory showing of
19   the facts is necessary." Boschetto v. Hansing, 539 F.3d
20   1011, 1020 (9th Cir. 2008) (quoting Data Disc, Inc. v.
21   Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1285 n.1 (9th
22   Cir. 1977)).  However, "where a plaintiff's claim of
23   personal jurisdiction appears to be both attenuated and
24   based on bare allegations in the face of specific
25   denials made by the defendants, the Court need not
26   permit even limited discovery . . . ." Pebble Beach,
27   453 F.3d at 1160 (quoting Terracom v. Valley Nat'l Bank,
28   49 F.3d 555, 562 (9th Cir. 1995)).

Plaintiff requests that the Court permit jurisdictional discovery if it concludes jurisdiction is lacking. Opp'n 14:1-4. Plaintiff does not provide the discovery requests he intends to propound but states that discovery "will elucidate numerous issues," such as: (1) the extent of Defendant's conduct directed toward California (e.g., its partnerships and other in-forum relationships); (2) the nature of the work that Defendant's California-based employees are engaged in; (3) Defendant's contacts with California in 2017; and (4) other matters. Id. 14:20-24.

Defendant argues, and the Court agrees, that the facts are largely uncontroverted and sufficiently clear such that jurisdictional discovery is unwarranted. Reply 8:22-24. Plaintiff's alleged jurisdictional facts largely rest on conjecture. Defendant provided detailed declarations that specifically refute Plaintiff's surmises. Any controverted facts, when viewed in the light most favorable to Plaintiff, are insufficient to create jurisdiction over Defendant.

The Court finds no basis for allowing Plaintiff to scavenge for Defendant's California contacts, especially where Plaintiff's broad request is premised on speculation without any explanation as to how discovery might alter the jurisdictional analysis. See, e.g., Boschetto, 539 F. 3d at 1020 (holding that the district court did not abuse its discretion by denying jurisdictional discovery where the request "was based on

little more than a hunch that it might yield jurisdictionally relevant facts"); <u>Adobe Sys.</u>, 2015 WL 5834135, at *6 (finding that the plaintiff's "purely speculative allegations of attenuated jurisdictional contacts" were insufficient to warrant jurisdictional discovery); <u>Barantsevich</u>, 954 F. Supp. 2d at 996 (C.D. Cal. 2013) (citations omitted) ("Jurisdictional discovery need not be allowed . . . if the request amounts merely to a 'fishing expedition.'"). Accordingly, the Court **DENIES** Plaintiff's request for jurisdictional discovery.

### III. CONCLUSION

Based on the foregoing, Defendant's Motion is **GRANTED in part** and **DENIED in part.**

The Court **GRANTS** the Motion to the extent Defendant seeks an order finding an inadequate basis for personal jurisdiction and to the extent it seeks transfer of this Action; **DENIES** the Motion to the extent Defendant seeks dismissal for lack of personal jurisdiction; and **DENIES as moot** the Motion as to the arguments made pursuant to Rule 12(b)(3) and 28 U.S.C. § 1404.

The Clerk of Court is **DIRECTED** to transfer this Action to the Eastern District of Missouri.

**IT IS SO ORDERED.**


DATED: January  8 , 2021      ___/s/ Ronald S.W. Lew_____

**HONORABLE RONALD S.W. LEW**
Senior U.S. District Judge